**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| JERRY STEWART, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) |
| | )   Case No. 2:21-cv-02358-JPM-atc |
| TOWN OF ROSSVILLE,[1] TENNESSEE; DAVE | ) |
| HAMRIC, Personally and in his Official Capacity | ) |
| as Chief of Police; JUDY WATTERS,[2] Personally | ) |
| and in her Official Capacity as Mayor; ZACH | ) |
| MOORE, Personally and in his Official Capacity | ) |
| as Vice Mayor; BOBBY WILLIAMS, Personally | ) |
| and in his Official Capacity as Alderman; DOUG | ) |
| KRANZ, Personally and in his Official Capacity | ) |
| as Alderman; SONDRA HARRIS, Personally and | ) |
| in her Official Capacity as Alderman; SHERRYE | ) |
| RINEHART, Personally and in her Official | ) |
| Capacity as Alderman; MIKE SWESSEL, | ) |
| Personally and in his Official Capacity as | ) |
| Alderman, | ) |
| | ) |
|     Defendants. | ) |

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendants' Motion for Summary Judgment, filed on May 9, 2022.

(ECF No. 24.)  On June 6, 2022, Plaintiff Jerry Stewart ("Stewart") filed Plaintiff's Response to

Motion for Summary Judgment.  (ECF No. 25.)  Defendants replied on June 20, 2022.  (ECF No.

28.)

---

[1] Defendants assert that the Town of Rossville is "incorrectly referred to as the 'City of Rossville' in the Amended Complaint."  (ECF No. 24 at PageID 161.)  Plaintiff does not deny this fact and refers to this Defendant as the "Town of Rossville" in his Response.  (See generally ECF No. 25.)

[2] Defendants assert that this Defendant is "incorrectly referred to as 'Judy Waters' in the Amended Complaint."  (ECF No. 24 at PageID 161.)  Plaintiff does not deny this fact and spells this Defendant's name inconsistently as both "Waters" and "Watters" within his Response.  (See, e.g., ECF No. 25 at PageID 584.)

For the reasons discussed below, Defendants' Motion for Summary Judgment is hereby **GRANTED**.

## I.     BACKGROUND

### A. *Factual Background*

In 2009, Plaintiff pled guilty to violating 18 U.S.C. § 2423(b), "involving interstate travel with the intent to engage in illicit sexual conduct with a fourteen-year-old female." (Defendants' Statement of Material Facts, "Def. SUMF," ECF No. 24-36 ¶ 1.)  Plaintiff is registered as a sex offender with the State of Tennessee pursuant to Tenn. Code Ann. § 40-39-203(a).  (Id. ¶ 2.) Pursuant to Tenn. Code Ann. § 40-39-211, one of the requirements of the Sex Offender Registry "is that a sex offender cannot establish a primary or secondary residence, or any other living accommodation, within one thousand feet of the property line of any . . . public park." (Id. ¶ 3.)

During the summer of 2020, Plaintiff and his wife, Lindsey Stewart, found a house that they wished to buy at 150 2nd Street in the Town of Rossville, Tennessee (the "Town" or "Rossville"). (Id. ¶ 14.)  They were familiar with the surrounding neighborhood, having eaten multiple times at Wolf River Café down the street.  (Id. ¶ 16.)

There is a 1.47-acre parcel of land located down the street from 150 2nd Street and across the street from Wolf River Café.  (Id. ¶ 17.)  Defendants contend, and Plaintiff disputes,[3] that this parcel "is known as Lafayette Park."  (Id. (citing Am. Compl., ECF No. 20 ¶¶ 30, 42; Stewart Dep., ECF No. 24-1 at PageID 173; L. Stewart Dep., ECF No. 24-29 at PageID 435–36); Plaintiff's Response to Statement of Material Facts, "Resp. SUMF," ECF No. 33 ¶ 17.)  The parcel is owned

---

[3] Plaintiff contends that this parcel "has been referred to as Gazebo Park, Town Park and City Park," "has never been formally dedicated at a dedication ceremony as Lafayette Park by the Town of Rossville," has a plaque on the gazebo that "does not refer to the location as Lafayette Park," and has a historical marker on the site that "does not refer to the location as Lafayette Park."  (Resp. SUMF, ECF No. 33 ¶ 17.) (citing Watters Dep., ECF No. 27-3 at PageID 1120–24.)

by Norfolk Southern Railway, which leases it to the Town of Rossville under a lease that provides that "[t]he Premises shall be used for park and public parking and no other purpose." (Def. SUMF, ECF No. 24-36 ¶¶ 18–20.)  The Town built a gazebo on the parcel in 1996, has constructed and maintains walking paths, park benches, a bicycle rack, and a public trash receptacle, and mows the grass on the parcel. (Id. ¶¶ 21–23.)  The Town of Rossville owns a second, 12.42-acre parcel of land that it refers to as Spring Lake Park,[4] which is adjacent to the Lafayette Park parcel. (Id. ¶¶ 24–25.)  In 2013, the Town received a grant of $200,000 from the Tennessee Department of Environment and Conservation ("TDEC") to construct a pedestrian bridge connecting the two parcels, and in 2014, TDEC contracted with the Town to construct the bridge, as well as walking trails on the Spring Lake Park parcel. (Id. ¶¶ 27–28.)  The parcels referred to as Lafayette Park and Spring Lake Park "are open to the public for the recreational use and enjoyment of the public." (Id. ¶ 29.)  Each of these two parcels is less than 1,000 feet from the property line of 150 2nd Street. (Id. ¶¶ 30–31.)

Prior to 2020, Plaintiff and his wife had visited the parcel referred to as Lafayette Park and entered the gazebo several times and had once crossed the pedestrian bridge to the Spring Lake Park parcel. (Id. ¶ 32.)  During the summer of 2020, Plaintiff knew that "he could not reside, as a primary or secondary residence, within 1,000 feet of a public park." (Id. ¶ 33.)

Prior to making an offer on the house at 150 2nd Street, Plaintiff and his wife did not advise his real estate agent, Judy Jones, that Plaintiff could not live within 1,000 feet of a public park and

---

[4] Plaintiff admits that this parcel "is referred to as Spring Lake Park" but asserts that "none of the parks in Rossville have ever been named in an official ceremony" and objects to "the arbitrary names assigned to the parks in the motion for summary judgment." (Resp. SUMF, ECF No. 33 ¶ 24.) (citing Watters Dep., ECF No. 27-3 at PageID 1124.)  The Court finds that although the names of the two parcels at issue in this case were not memorialized through naming ceremonies or other public events after being designated by the Board of Aldermen, there is uncontroverted testimony that the names were published in the local newspaper, and it is fair to say that these parcels were "referred to" as Lafayette Park and Spring Lake Park.  Accordingly, the Court will use that phrasing going forward. (See Watters Dep., ECF No. 27-3 at PageID 1123–24.)  The Court also sometimes refers to the parcels simply as the "Lafayette Park parcel" and the "Spring Lake Park parcel" for brevity.

did not discuss either parcel with her.  (Id. ¶ 34.)  Plaintiff also "did not contact anyone at Rossville

Town Hall regarding the parcels of land known as Lafayette Park or Spring Lake Park," nor did

he visit the Town's website, whose Parks Department page contains a photograph of the gazebo.

(Id. ¶¶ 37–38.)  He did not "speak with any property owners or business owners near 150 2nd

Street to ask about the parcels of land known as Lafayette Park or Spring Lake Park."  (Id. ¶ 39.)

He did speak with Detective Brian Dickey—a then-detective with the Shelby County Sheriff's

Office assigned to the sex offender registry—who advised Plaintiff that the Tennessee Bureau of

Investigation's ("TBI") website contained a map of "prohibited properties."  (Id. ¶¶ 13, 41.)  Before

making an offer on 150 2nd Street, Plaintiff visited the TBI website and saw the following

disclaimer:

> The Tennessee Bureau of Investigation (herein "TBI") makes no representation or warranty
> as to the accuracy of this map and the information contained within nor to its fitness for a
> particular purpose or use. The purchaser or user accepts this map on an "AS IS" basis and
> assumes all responsibilities for the use thereof. The user will assume the entire risk and
> agrees to hold the TBI and its staff harmless of any liability resulting from any direct,
> indirect, incidental, special, consequential, or other damages, including loss of profit,
> arising out of the use of this map. The user is responsible for independent verification of
> all information on this map.

(Id. ¶ 43.)[5]  Plaintiff never advised Detective Dickey of the address of the property he was

considering purchasing.  (Id. ¶¶ 42, 44.)  He did not speak with Detective Dickey or anyone else

at the Shelby County Sheriff's Office after viewing the disclaimer.  (Id. ¶¶ 44–45.)  He did not

speak with anyone at Rossville City Hall, the Rossville Police Department, the Fayette County

---

[5] The Tennessee Department of Corrections ("TDOC") also maintains a map of restricted locations (the "CEZ map").
(ECF No. 34-1 ¶ 74.)  Plaintiff did not visit the TDOC website or view the CEZ map before making the offer on 150
2nd Street.  (See Stewart Dep., ECF No. 24-1 at PageID 182–83.) (Q: "Did you look at anything other than the TBI
map before you made your offer for the property at 150 2nd Street?" A: "No.")  The CEZ map is "not publicized" and
is "not readily available."  (Winchester Dep., ECF No. 27-4 at PageID 1183, 1191.)

Sheriff's Office, or TBI regarding the parcels of land referred to as Lafayette Park and Spring Lake Park.  (Id. ¶¶ 46–48.)

On October 6, 2020, Plaintiff and his wife closed on the 150 2nd Street property.  (Id. ¶ 49.)  The next day, Defendant Dave Hamric, Chief of Police for the Town of Rossville, visited Plaintiff at his home in Collierville, Tennessee, and "asked him whether he intended to reside at 150 2nd Street, Rossville, Tennessee."  (Id. ¶¶ 4, 50.)  Plaintiff stated that he did.  (Id. ¶ 51.)  Chief Hamric gave Plaintiff a copy of Tenn. Code Ann. § 40-39-211 and advised him that if he moved into 150 2nd Street with the intent to reside there, he would be in violation of that statute due to the proximity of Lafayette Park and would be subject to arrest.  (Id. ¶ 52.)  Plaintiff and his wife never moved into 150 2nd Street and sold that property.  (Id. ¶ 54.)  Neither Chief Hamric nor any member of the Board of Mayor and Aldermen ever advised Plaintiff that he had to sell 150 2nd Street, and Plaintiff was never arrested.  (Id. ¶¶ 53, 63.)  Plaintiff and his wife subsequently bought another residence in the Town of Rossville, which is not located within 1,000 feet of a public park. (Id. ¶¶ 60–61.)

B.  *Procedural Background*

Plaintiff filed this action on May 28, 2021 (ECF No. 1) and then filed an Amended Complaint (the "Complaint") on September 29, 2021 (ECF No. 20).  Defendants filed an Answer to the Amended Complaint on April 23, 2022.  (ECF No. 21.)  Defendants then filed the instant Motion for Summary Judgment, along with a Memorandum of Law in Support, on May 9, 2022. (ECF Nos. 24, 24-35.)  They also filed a Statement of Material Facts.  (ECF No. 24-36.)  Plaintiff filed a Response to Defendants' Motion for Summary Judgment on June 6, 2022.  (ECF No. 25.) Defendants filed a Reply in Support of their Motion for Summary Judgment on June 20, 2022. (ECF No. 28.)   Plaintiff then moved the Court for leave to file his Response to Defendants'

Statement of Material Facts out of time, having realized that he had inadvertently failed to file this document with his Response to Defendants' Motion.  (ECF No. 29.)  The Court granted Plaintiff's Motion (ECF No. 32), and Plaintiff subsequently filed his Response to Defendants' Statement of Material Facts, which also contains Plaintiff's Statement of Additional Undisputed Facts (ECF No. 33).  Defendants then filed a Supplemental Reply in Support of Defendants' Motion for Summary Judgment (ECF No. 34) and a Response to Plaintiff's Statement of Additional Undisputed Facts (ECF No. 34-1).

## II.    LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense."  Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party."  Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact."  Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  Mosholder, 679 F.3d at 448–49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.  "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law

and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted).

In order to "show that a fact is, or is not, genuinely disputed," a party must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." L.R. 56.1(b)(3); Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex, 477 U.S. at 325)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 Fed. Appx. 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 251-52). Summary judgment "'shall be entered' against the non-moving party unless affidavits or other evidence 'set forth specific facts showing that there is

a genuine issue for trial.'" <u>Rachells v. Cingular Wireless Emp. Servs., LLC</u>, No. 1:08CV02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 884 (1990)).  "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." <u>Tingle v. Arbors at Hilliard</u>, 692 F.3d 523, 529 (6th Cir. 2012) (quoting <u>Liberty Lobby</u>, 477 U.S. at 251).  "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position." <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 584 (6th Cir. 1992) (citing <u>Liberty Lobby</u>, 477 U.S. at 247-254; <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th Cir. 1989)).  "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." <u>Rachells</u>, 2012 WL 3648835, at *2 (quoting <u>Thomas v. Christ Hosp. & Med. Ctr.</u>, 328 F.3d 890, 894 (7th Cir. 2003)).  Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient.  <u>See</u> <u>Mitchell</u>, 964 F.2d at 584–85.

## III.   ANALYSIS

The Court discusses Defendants' Motion with respect to each of Stewart's eleven counts below.  (<u>See</u> Am. Compl., ECF No. 20 at PageID 112–27.)  For the reasons discussed below, Defendants' Motion for Summary Judgment is **GRANTED** in its entirety.

### A.  Official-Capacity Claims

Defendants first assert that Plaintiff's "'official capacity' claims are redundant and should be dismissed," as "the Town of Rossville is a party and has filed an Answer, and Mayor Watters, Chief Hamric, and the members of the Board of Mayor and Aldermen are not subject to suit for

monetary damages in their official capacities."  (ECF No. 24-35 at PageID 549–50.) (citing <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 68 (1989); <u>Matthews v. Jones</u>, 35 F.3d 1046, 1049 (6th Cir. 1994); <u>Wells v. Brown</u>, 891 F.2d 591, 593 (6th Cir. 1989).)  Plaintiff does not respond to Defendants' argument regarding his official-capacity claims.  (<u>See generally</u> ECF No. 25.)  In their Reply, Defendants contend that, "[a]s Plaintiff has failed to respond to Defendants' arguments with respect to the [official-capacity] claims, this Court may properly find that Plaintiff has abandoned or waived those claims and grant summary judgment to Defendants as to such claims." (ECF No. 28 at PageID 1212–13.) (collecting cases demonstrating that "[d]istrict courts in this Circuit grant summary judgment as a matter of course as to arguments a plaintiff fails to address in a summary judgment response.")

Ordinarily, a party forfeits "issues not raised in response to [a] dispositive motion[]." <u>Swanigan v. FCA US LLC</u>, 938 F.3d 779, 786 (6th Cir. 2019) (citing <u>Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.</u>, 757 F.3d 540, 545 (6th Cir. 2014)).  Additionally, on the merits, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."  <u>Matthews</u>, 35 F.3d at 1049 (citing <u>Will</u>, 491 U.S. at 68).  Thus, "[w]here the entity is named as a defendant, an official-capacity claim is redundant."  <u>Foster v. Michigan</u>, 573 F. App'x 377, 390 (6th Cir. 2014) (citing <u>Faith Baptist Church v. Waterford Twp.</u>, 522 F. App'x 322, 327 (6th Cir. 2013)).  Accordingly, because Plaintiff has named the Town of Rossville as a Defendant, Plaintiff's official-capacity claims against Dave Hamric, Judy Watters, Zach Moore, Bobby Williams, Doug Kranz, Sondra Harris, Sherrye Rinehart, and Mike Swessel (<u>see</u> ECF No. 20 ¶¶ 3–10) should be dismissed as duplicative of Plaintiff's claims against the Town. Defendants' Motion is **GRANTED** with respect to Plaintiff's official-capacity claims.

*B.  Section 1983 Claims*

Forty-two U.S.C. § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." Rehberg v. Paulk, 566 U.S. 356, 361 (2012). "Section 1983 does not [] create substantive rights" but instead "merely provides a mechanism for enforcing individual rights 'secured' elsewhere." Johnson v. City of Detroit, 446 F.3d 614, 618 (6th Cir. 2006) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002)) (some internal quotation marks omitted). To succeed on a § 1983 claim, a plaintiff must prove (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the [] deprivation was committed by a person acting under color of state law." Nouri v. Cnty. of Oakland, 615 F. App'x 291, 295 (6th Cir. 2015) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)). The "first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994) (internal citations omitted).

Plaintiff alleges, pursuant to § 1983, that Defendants committed various violations of his rights under the Fifth and Fourteenth Amendments of the United States Constitution. (See ECF No. 20 at PageID 112–21, Counts I–VII.) Defendants contend that all of "Plaintiff's § 1983 claims fail as a matter of law." (ECF No. 24-35 at PageID 551.) Below, the Court addresses Defendants' arguments with respect to each of Plaintiff's § 1983 claims.

### i.    Fifth Amendment Claims (Counts I & II)

Defendants assert that "Plaintiff's Fifth Amendment due process claim[s] . . . fail[] as a matter of law."[6] (ECF No. 24-35 at PageID 552.) (citing Scott v. Clay Cnty. Tenn., 205 F.3d 867, 873 (6th Cir. 2000).) They assert that "[i]t is well-established that the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government[,] [which] is not a party

---

[6] Defendants refer to "Plaintiff's Fifth Amendment due process claim [Count II]" (ECF No. 24-35 at PageID 552) (brackets in original) and earlier refer to "[Plaintiff's] procedural due process claims [Counts I, III, IV, V, and VI]" (id. at PageID 551). Count I, however, is also a Fifth Amendment claim (see ECF No. 20 at PageID 112), and the Court sees no reason why Defendants' argument as to Count II should not apply to Count I as well.

to the present case." (Id.) (citing Scott, 205 F.3d at 873.)  "[T]he Fifth Amendment's Due Process Clause applies only to actions by the federal government," Haertel v. Mich. Dep't of Corr., No. 20-1904, 2021 WL 4271908, at *3 (6th Cir. May 11, 2021) (citing Scott, 205 F.3d at 873 n.8), and thus "does not apply in this case, which involves only the [Town of Rossville] and its employees." Id.  Additionally, Plaintiff does not address Defendants' argument as to his Fifth Amendment claims in his Response (see generally ECF No. 25), thereby forfeiting the issue.  See Swanigan, 938 F.3d at 786 (citing Am. Copper & Brass, Inc., 757 F.3d at 545).  Accordingly, Defendants' Motion is **GRANTED** as to Plaintiff's Fifth Amendment claims (Counts I & II).

      ii.    Fourteenth Amendment Claims Against Chief Hamric (Counts III, V, & VII)

      **a. Procedural Due Process Claims**

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const., Amend. XIV § 1.  "Thus, '[p]rocedural due process generally requires that the state provide a person with notice and opportunity to be heard before depriving that person of a property or liberty interest.'"  Hill v. Jackson, Mich., 751 F. App'x 772, 776 (6th Cir. 2018) (quoting Warren v. City of Athens, 411 F.3d 697, 708 (6th Cir. 2005)).  Plaintiff contends that he "has a constitutionally protected right to own private real property that is a distance of greater than 1,000 feet from a designated property as that term is defined by T.C.A. § 40-39-211."  (Am. Compl., ECF No. 20 ¶ 54.)  Plaintiff alleges that Hamric violated his Fourteenth Amendment due process right by failing to afford him a pre-deprivation hearing before "deny[ing] Stewart the right to the use and possession of his private property," that is, 150 2nd Street (Count III).  (ECF No. 20 at PageID 115–16.)  Plaintiff additionally alleges that Chief Hamric violated his Fourteenth Amendment due process right by engaging in "unlawful burden shifting" (Count V).  (Id. at PageID 118–19.)  He accuses Hamric of "shift[ing] the legal

burden of proof from Defendant-Hamric, where it belongs, to Stewart to prove that Lafayette Park is not a 'public park' . . ., without a pre-deprivation hearing."  (<u>Id.</u> at PageID 118.)

### 1.  Adequate State-Law Remedy

As a preliminary matter, Defendants contend that Plaintiff's "procedural due process claims . . . fail as a matter of law" because "Plaintiff has not alleged and proven that there is no adequate state-law remedy for the [alleged procedural due process] violation."  (ECF No. 24-35 at PageID 551.) (citing <u>Hill</u>, 751 F. App'x at 777; <u>Daily Servs., LLC v. Valentino</u>, 756 F.3d 893, 904 (6th Cir. 2014).)  Defendants contend that, "[t]o state a § 1983 claim . . . based upon a procedural due process violation involving an allegedly random and unauthorized act—which is what Plaintiff alleges—a plaintiff is required to plea and prove that there is no adequate state-law remedy for the violation."  (<u>Id.</u>) (citing <u>Hill</u>, 751 F. App'x at 777; <u>Braley v. City of Pontiac</u>, 906 F.2d 220, 225 (6th Cir. 1990).)  Not only has Plaintiff failed to do so, Defendants assert, but also "he concedes that, had he been arrested, he would have had the ability to challenge whether Lafayette Park[] [and] Spring Lake Park[] were, in fact, parks and that a judge would have made that determination" during the "ensuing criminal case."  (<u>Id.</u> (citing ECF No. 24-1 at PageID 235, 269); <u>id.</u> at PageID 553.)

In response, Plaintiff rejects Defendants' argument that, in Plaintiff's words, "the process of criminal charge and indictment of Plaintiff offers a sufficient forum for Mr. Stewart to address Rossville's unconstitutional taking."  (ECF No. 25 at PageID 578–79.)  Plaintiff distinguishes <u>Hill</u> as "premised on the existence of a pre-deprivation hearing under the city's condemnation process," whereas "[n]o such hearing was suggested by Rossville or offered to Mr. Stewart in place of booking and processing."  (<u>Id.</u> at PageID 578.)  Plaintiff asserts that, had he "chosen the path that Rossville suggests," he would have had to give up his Fifth Amendment right not to incriminate

12

himself by testifying against himself in the criminal case, in order to "vindicate his constitutional rights for the taking." (Id.)  He argues that "[t]his is not the bargain the Sixth Circuit had in mind when it decided Hill." (Id.)

The Supreme Court has "divide[d] procedural due process claims between those that 'involv[e] a direct challenge to an established state procedure' and 'those challenging random and unauthorized acts.'"  Hill, 751 F. App'x at 777 (quoting Daily Servs., LLC, 756 F.3d at 907) (further internal citation and some quotation marks omitted); see also Parratt v. Taylor, 451 U.S. 527, 541–44 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986). "As to the latter, . . . before bringing a § 1983 claim for damages, the plaintiff [must] show 'a loss for which available state remedies would not adequately compensate the plaintiff.'"  Hill, 751 F. App'x at 777 (quoting Daily Servs., LLC, 756 F.3d at 907) (further internal citation omitted).  This is because "when a random and unauthorized deprivation occurs, [] pre-deprivation procedures are simply impracticable[,] and an adequate post-deprivation remedy affords all the process that is due."  Id. (quoting Silberstein v. City of Dayton, 440 F.3d 306, 316 (6th Cir. 2006)) (further internal citation and internal quotation marks omitted).

In Hill, the court held that the plaintiff was required to demonstrate the absence of an adequate state-law remedy before bringing his §1983 claim.  Id.  The Court reasoned that the County failed to follow the City's "extensive [and constitutionally adequate] condemnation procedures," thereby "commit[ing] an unauthorized act that undermined" those procedures and "prevent[ing] Hill from receiving notice of the property's condemnation status" before he bought the condemned property.  Id. at 777–78.  The court held that Hill had failed to "'explain why the ability to be heard in state court . . . even in the absence of damages, [would be] insufficient to remedy [his] process violations' prior to the district court hearing [his] claim."  Id. at 779 (quoting

Daily Servs., 756 F.3d at 910).  The court implied that Hill could have brought suit against the County for its violation of the City's procedure, which it noted would likely serve as a state-law remedy for the violation.  Id. at 778.

Plaintiff's argument that Hill was premised on the existence of a pre-deprivation hearing misses the point that the plaintiff in that case was required to show that there was no state-law remedy *after* the harm had already occurred.  In other words, the relevant remedy, according to the court, was not the pre-deprivation hearing but, for example, a post-deprivation lawsuit initiated by the plaintiff.  Stewart's argument that the city did not offer him a *hearing* "in place of booking and processing" (ECF No. 25 at PageID 578), therefore, is irrelevant, and he has not put forward any case law to distinguish the opportunity to be heard provided by a civil lawsuit versus a criminal prosecution.  Therefore, if Chief Hamric's conduct constitutes a "random and unauthorized act," Plaintiff has failed to show there was no adequate state law remedy available to him.  Hill, 751 F. App'x at 777 (quoting Daily Servs., LLC, 756 F.3d at 907) (further internal citation and some quotation marks omitted).

Plaintiff implies in his Response that this case involves a "challenge to an established state procedure" rather than a "random and unauthorized act[]."  Hill, 751 F. App'x at 777 (internal citations and quotation marks omitted) (See ECF No. 25 at PageID 577.)  The Court, however, finds it unnecessary to decide whether Plaintiff was required to allege the absence of a state-law remedy because his claims fail on the merits, as discussed below.  Accordingly, the Court moves on to address whether Plaintiff has alleged an actionable constitutional violation. See Nouri, 615 F. App'x at 295 (quoting West, 487 U.S. at 48).

2. *Constitutional Rights Violation and Qualified Immunity*

Defendants assert that "Plaintiff's procedural due process claims also fail on the merits." (Id. at PageID 552.)  They assert that is "[i]t is well-established that spoken words, even in the form of a threat, do not constitute an infringement of a constitutional right and are not actionable under § 1983." (Id.) (citing Smith v. Capots, 78 F.3d 585 (Table), at *2 (6th Cir. 1996); Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989); Macko v. Byron, 760 F.2d 95, 97 (6th Cir. 1985).)  Defendants compare this case with Hussein v. City of Perrysburg, 617 F.3d 828 (6th Cir. 2010).  (Id. at PageID 552.)  Defendants contend that, "[l]ike the plaintiff's claims in Hussein, Plaintiff's procedural due process claims fail as a matter of law." (ECF No. 24-35 at PageID 553.)  Defendants contend:

> By advising Plaintiff that he would be subject to arrest if he moved into 150 2nd Street with the intention of residing there because that would violate Tenn. Code Ann. § 40-39-211, Chief Hamric did not violate Plaintiff's constitutional rights.  [Hussein, 617 F.3d] at 832. As in Hussein, had Plaintiff failed to comply and chosen to move into 150 2nd Steet and was thereafter arrested, the ensuing criminal case would have provided Plaintiff the opportunity to be heard.

(Id.)

Defendants contend that, because "Plaintiff cannot prove a violation of his procedural due process rights, Chief Hamric is entitled to qualified immunity." (Id. at PageID 554.)  They assert that "[i]n light of [] Hussein [], even if Plaintiff could prove a constitutional violation, Chief Hamric would nevertheless be entitled to qualified immunity because his conduct did not violate clearly established law." (Id. at PageID 554 n.1.)

In response, Plaintiff rejects Defendants' argument that Hamric's mere verbal threat to arrest Plaintiff could not have been a constitutional deprivation and attempts to distinguish Hussein. (ECF No. 25 at PageID 578.)  Plaintiff contends that, unlike here, in Hussein, "[n]o threat of criminal prosecution was made and no legal jeopardy attached," as the plaintiff "could have

15

availed himself of [a civil procedure] to resolve the issue" after the city inspector issued a stop-work order on the plaintiff's construction project. (Id.)

Plaintiff also contends that whereas "the issue of the city inspector's qualified immunity" was a central issue in Hussein, "[t]his case has no issues relevant to qualified immunity because the unconstitutional actions complained of were those of policy makers for the Town of Rossville." (Id. at PageID 579.) Plaintiff relies on Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) for the proposition that "even a single action by a decisionmaker who 'possesses final authority to establish municipal policy with respect to the action ordered,' is sufficient to implicate the municipality in the constitutional deprivation for the purposes of § 1983." (ECF No. 25 at PageID 580.) (quoting Pembaur, 475 U.S. at 481–82.) Plaintiff contends that there is a jury question as to whether Hamric's "failure to report the properties, Lafayette Park[] [and] Spring Lake Park . . . , to the state of Tennessee for inclusion in the T.B.I. and the T.D.O.C. mapping system over a period of 8 to 10 years" constituted an unconstitutional municipal policy under Pembaur. (ECF No. 25 at PageID 582.).

In reply, Defendants assert that Plaintiff "not only misconstrues Pembaur, [but also] ignores the Sixth Circuit's ruling in Hussein, conflates the issues of municipal and individual liability, and ignores the allegations of the Amended Complaint, in which Plaintiff specifically alleges claims against Chief Hamric in his individual capacity." (ECF No. 28 at PageID 1214.) (citing ECF No. 25 at PageID 579; ECF No. 20 ¶ 3.)

Defendants characterize Hussein as "involv[ing] a threat by a city inspector, accompanied by two police officers, to take the plaintiffs' subcontractor to court unless the subcontractor ceased installing asphalt after a 'stop work' order had been issued," after which the plaintiffs sued the city under a similar theory of due process violation as in this case. (Id. at PageID 1214–15.) (citing

16

Hussein, 617 F.3d at 828, 831–32.)  Defendants quote the Hussein Court's holding reversing the

trial court's denial of the defendants' motion for summary judgment as to procedural due process:

> The defendants are entitled to qualified immunity because state officials are permitted under the Constitution to inform citizens of the officials' view that they are violating state or local law. **State officials are also permitted to threaten litigation or prosecution if citizens do not agree to conform their actions to state or local law.** The Husseins are correct that they cannot be deprived of a protected property interest without due process of law, and that typically, notice and an opportunity to be heard are required before depriving citizens of property interests. (*internal citations omitted*). But if a state official states his view that a citizen's actions are in violation of the law and threatens litigation, this is not a deprivation of the citizen's interest without notice and an opportunity to be heard. These actions are the provision of notice, and if the citizen does not comply with the official's demands, the threatened litigation will provide the opportunity to be heard. To demand notice before an official can inform citizens that they are in violation of the law would be to demand notice as a precondition of notice. The Constitution does not impose recursively impossible demands upon state officials who seek to enforce the law.

(ECF No. 28 at PageID 1215.) (emphasis in original.) (quoting Hussein, 617 F.2d at 832.)

Defendants further contend that, under Hussein, "Hamric is entitled to qualified immunity"

because his statement that was the basis for the individual-capacity claims against him was, as a

matter of law, "not an unconstitutional act, nor does it violate Plaintiff's procedural or substantive

due process rights."  (Id.)  Defendants assert that "Pembaur does nothing to avoid dismissal of

Plaintiff's individual claims against Chief Hamric."  (Id.)  Defendants assert that the "sole issue"

in Pembaur was whether a single decision by municipal policymakers may satisfy Monell's

municipal-policy avenue for imposing municipal liability, as the plaintiff had only appealed the

dismissal of his claims against the municipality not those against the individual defendants.  (Id.

at PageID 1216.) (quoting Pembaur, 475 U.S. at 471, 474, 477.)  Defendants distinguish Pembaur

as involving "a violation of the plaintiff's Fourth Amendment rights," whereas, they contend,

Hamric's statement here violates no constitutional rights.  (Id.) (citing Pembaur, 475 U.S. at 484.)

Plaintiff's attempt to distinguish this case from Hussein as involving a threat of arrest rather

than civil litigation is unconvincing.  The Hussein court foreclosed such a distinction by holding

that "[s]tate officials are [] permitted to threaten litigation <u>or prosecution</u>" if individuals do not agree to follow the law.  617 F.2d at 832 (emphasis added).  As in <u>Hussein</u>, Hamric's statement to Plaintiff that he would be arrested if he moved into the property at 150 2nd Avenue constituted "the provision of notice," and if Plaintiff "[had] not compl[ied] with [Hamric's] demands," the ensuing legal proceedings would have "provide[d] the opportunity to be heard."  <u>Id.</u>  Plaintiff has not put forward any case law suggesting that <u>Hussein</u>'s conclusion that the Constitution does not "demand notice as a precondition of notice" does not apply in this case.  <u>Id.</u>

Plaintiff's attempt to distinguish <u>Hussein</u> as involving issues of qualified immunity is also unavailing.  "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Mullenix v. Luna</u>, 577 U.S. 7, 11 (2015) (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009)) (further internal citation and some quotation marks omitted).  "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates the right.'"  <u>Id.</u> (internal citation omitted). The <u>Hussein</u> court held that the "defendants [were] entitled to qualified immunity" because their actions were constitutionally permissible.  617 F.2d at 832.  Likewise, this Court has already concluded that Chief Hamric did not violate Plaintiff's constitutional rights by threatening to arrest Plaintiff if he moved into 150 2nd Street without first providing him a pre-deprivation hearing. Accordingly, Plaintiff's fifth Count—that by failing to afford a pre-deprivation hearing, Hamric impermissibly avoided having to "legally support or prove the soundness or correctness" of his decision and instead "unconstitutionally shifted the legal burden" to Plaintiff to prove that Lafayette Park is *not* a "public park"—must also fail.  (ECF No. 20 ¶ 80.)  Plaintiff has also put forward no evidence suggesting that Hamric's failure to report the alleged parks for inclusion on

the TBI and the CEZ maps was itself unconstitutional.  (ECF No. 25 at PageID 582, 585–86.)

Moreover, Defendants are correct that even if these actions were constitutional violations, they do

not "violate clearly established law" (ECF No. 24-35 at PageID 554 n.1.), as it is not "sufficiently

clear that every reasonable official would have understood" that warning Plaintiff that he would

be arrested or making him prove Lafayette Park was not a public park without a pre-deprivation

hearing violated his rights.  Mullenix, 577 U.S. at 11–12 ("The dispositive question [for defining

clearly established law] is 'whether the violative nature of *particular* conduct is clearly

established.' This inquiry 'must be undertaken in light of the specific context of the case, not as a

broad general proposition.'" (internal citations and some quotation marks omitted)).

Additionally, as Defendants contend in their Reply, Plaintiff's invocation of Monell

liability and Pembaur is inapplicable to Plaintiff's claims against Hamric in his individual capacity

and does not override Hussein as controlling in this case.  (See ECF No. 28 at PageID 1214.)

(citing ECF No. 25 at PageID 579.)  In Monell v. Department of Social Services of the City of

New York, the Supreme Court addressed whether and when "municipalities and other local

governments" can be sued under § 1983.  436 U.S. 658, 690–91 (1978).  The Court concluded that

such suits are permissible when "execution of a government's policy or custom, whether made by

its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

the [constitutional] injury."  Id. at 694.  In Pembaur, the Court clarified that "municipal liability

may be imposed for a single decision by municipal policymakers," as long as "the decisionmaker

possesses final authority to establish municipal policy with respect to the action ordered."

Pembaur, 475 U.S. at 480–81.  Pembaur, however, says nothing about officials' individual liability

and is therefore inapplicable to Plaintiff's claims against Hamric himself.  Plaintiff's claims against

the Town of Rossville that are based on Hamric's actions will be discussed below within a larger

discussion of Plaintiff's claims against the Town.

Thus, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's

procedural due process claims against Hamric in his individual capacity (Counts III & V).

### b. Substantive Due Process Claim

Plaintiff alleges in his Complaint that Defendants have "violate[d] substantive due

process," in that they "cause[d] the deprivation of Stewart's fundamental constitutional liberty to

the use and possession of his private property, namely, 150 2nd St. in Rossville, Tennessee." (ECF

No. 20 ¶¶ 86–88.)

"Substantive due process 'protects individual liberty against "certain government actions

regardless of the fairness of the procedures used to implement them."'" Eldridge v. Shelby Cnty.,

Tenn., No. 2:19-cv-02461-JPM-cgc, 2020 WL 1962988, at *5 (W.D. Tenn. Apr. 23, 2022)

(quoting Collins v. City of Harker Heights, 503 U.S. 115, 116 (1992) (further internal citation

omitted)).  "[T]he interests protected by substantive due process are of course much narrower than

those protected by procedural due process." Hussein, 617 F.2d at 832 (quoting Bell v. Ohio State

Univ., 351 F.3d 240, 249–50 (6th Cir. 2003)).  "The substantive component of the Due Process

Clause 'specifically protects those fundamental rights and liberties which are, objectively, deeply

rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty, such

that neither liberty nor justice would exist if they were sacrificed.'" Eldridge, 2020 WL 1962988,

at *5 (quoting Washington v. Glucksberg, 521 U.S. 702, 720–21 (1997)) (further internal citations

and quotation marks omitted in original).  To determine whether substantive due process has been

violated, courts determine (1) "whether the interest at stake is a protected liberty or property

interest under the Fourteenth Amendment" and (2) "whether the deprivation of that interest

20

contravened notions of due process." Id. (quoting Wojcik v. City of Romulus, 257 F.3d 600, 609 (6th Cir. 2001)). "Government conduct that is so arbitrary and capricious that it 'shocks the conscience' contravenes established notions of due process." Id. (citing Range v. Douglas, 763 F.3d 573, 589–90 (6th Cir. 2014)).

Defendants contend that "Plaintiff's substantive due process claim [] fails as a matter of law." (ECF No. 24-35 at PageID 554.) They assert that none of the matters to which "[s]ubstantive due process protections have typically been limited . . . is at issue in the present case" (id.) (citing Albright, 510 U.S. at 272) and that Plaintiff also cannot meet the "shocks the conscience" test (see id. at PageID 554–57) (internal citations omitted). They contend that under this test, "Plaintiff must prove that there was some constitutionally suspect motive to harm him unrelated to the legitimate purpose of arresting a person who violates the law." (Id. at PageID 554.) (citing Cnty. of Sacramento v. Lewis, 118 S. Ct. 1708, 1717–18 (1998); Daniels v. Williams, 474 U.S. 327, 331 (1986); Ahlers v. Schebil, 188 F.3d 365, 373–74 (6th Cir. 1999); Manetta v. Macomb Cnty. Enforcement Team, 141 F.3d 270, 275–76 (6th Cir. 1998); Coffey v. Multi-Cnty. Narcotics Bureau, 600 F.2d 570, 580 (6th Cir. 1979).)

Defendants cite to portions of the record, dictionary definitions, and case law that, they contend, establish that the alleged public parks at issue are in fact public parks, even in the absence of a definition for "park" in Tenn. Code Ann. § 40-39-211. (Id. at PageID 555–56.) (citing Watters Decl., ECF No. 24-3 ¶¶ 13–16, 19, 23–48; Black's Law Dictionary (11th Ed. 2019); State v. Welch, 595 S.W.3d 615, 622 (Tenn. 2020); Williams v. Town of Morristown, 222 S.W.2d 607 (Tenn. Ct. App. 1949).) They additionally assert that "Plaintiff concedes there is no evidence to suggest that Chief Hamric did not honestly believe that Lafayette Park, Spring Lake Park, and Huntington Pointe Park were, in fact, parks." (Id. at PageID 555.) (citing Stewart Dep., ECF No.

24-1 at PageID 270–71.)  Defendants further assert that Plaintiff admits that he had familiarity with portions of Lafayette Park and Spring Lake Park, that "he is aware of no fact to suggest" that the parks "were not available for use by the general public," and that "he would hesitate to go to any of those [] parcels of land if minors were present."  (Id. at PageID 555–56.) (citing Stewart Dep., ECF No. 24-1 at PageID 214–16, 227, 261–62.  They assert that Stewart admits that he did not contact any neighbors, business owners, his realtor, or any Town personnel about these parcels, nor did he check the town website.  (Id. at PageID 556.) (citing Stewart Dep., ECF No. 24-1 at PageID 195–96, 200–01, 219.)   Further, Defendants assert that Plaintiff admits that he only believed there was no park within 1,000 feet of 150 2nd Street because the TBI Map (which contains the disclaimer discussed above) did not include the parks and "he did not see a sign identifying them as parks."  (Id.) (citing Stewart Dep., ECF No. 24-1 at PageID 195, 206.)

Defendants further contend that even if Hamric erred "in believing that the three parks were, in fact, parks and in advising Plaintiff that, if he had moved into 150 2nd Street with the intent to live there, he would be subject to arrest, this does not demonstrate knowing or intentional behavior designed to violate Plaintiff's constitutional rights."  (Id. at PageID 557.) (citing Ahlers, 188 F.3d at 373–74; Manetta, 141 F.3d at 275–76.)   Defendants asserts that "[t]here is no constitutional right to an error-free arrest."  (Id.) (citing Baker v. McCollan, 443 U.S. 137, 145–46 (1979).)  Accordingly, Defendants contend, Hamric's "comments to Plaintiff" do not "rise to the level of actions that 'shock the conscience' so as to violate Plaintiff's substantive due process rights," and Hamric is thus still entitled to qualified immunity.  (Id.) (citing Hussein, 617 F.3d at 833.)

Plaintiff responds that "inquiry into motive is only relevant when the question is whether qualified immunity is sought to protect a defendant" but that "Pembaur removes qualified

immunity from the equation." (ECF No. 25 at PageID 586.) (citing <u>Buck v. Rhoades</u>, No. 21-CV-0295-CVE-SH, 2022 WL 1032785, at *6 (N.D. Okla. Apr. 6, 2022).)   Plaintiff asserts that Rossville "tries to claim qualified immunity for its decision makers" but that none of Defendants' cited cases involve challenges to "the actions of the policy makers."   (<u>Id.</u>)   Plaintiff states that "[e]very defendant in this case is a decision maker when it comes to policy of the Town of Rossville."   (<u>Id.</u> at PageID 588.)   He asserts that they "kept secret for over two decades the identities of the parks of their town and only revealed them when a neighbor complained that [Plaintiff] was moving to town" and have still "not committed to clearly marking the parks for future purposes."   (<u>Id.</u>)   He also contends that "[t]hey refuse to identify the areas of their community prohibited to sex offenders and then threaten the sex offender with jail if he tries to move into his property."   (<u>Id.</u>)   Thus, he contends, "there is a clear jury question whether" they violated Plaintiff's constitutional rights.   (<u>Id.</u>)

As with Plaintiff's procedural due process claims, Defendants reply that Plaintiff "misconstrues <u>Pembaur</u>," conflates municipal with individual liability, and ignores the fact that the allegations of the Complaint are against Hamric in his individual capacity; Defendants assert that these issues are also present in Plaintiff's substantive due process claim.   (ECF No. 28 at PageID 1214–15.)   They assert that "[a]s a matter of law, the Chief's statement [to Plaintiff that he would be arrested if he moved into 150 2nd Street] is not an unconstitutional act, nor does it violate Plaintiff's . . . substantive due process rights; thus, Chief Hamric is entitled to qualified immunity."   (<u>Id.</u> at PageID 1215.)

"[T]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."   <u>Koenigs, L.L.C. v. City of Savannah, Tenn.</u>, No. 1:17-cv-01109-STA-egb, 2019 WL 1186863, at *2 (W.D.

Tenn. Mar. 13, 2019) (quoting <u>Albright v. Oliver</u>, 510 U.S. 266, 272 (1994)).  As Defendants

assert, "none of [these interests] is at issue in the present case."  (ECF No. 24-35 at PageID 554.)

Plaintiff does not address this argument in his Response.  (<u>See</u> ECF No. 25 at PageID 586–88.)  In

addition to the fact that any interest that Plaintiff had in residing at 150 2nd Street is not an interest

that has traditionally been the subject of substantive due process protection, none of Hamric's

conduct constituted "arbitrary and capricious government action that 'shock[ed] the conscience'"

and thereby violated substantive due process, as discussed below.  <u>Eldridge</u>, 2020 WL 1962988,

at *6 (quoting <u>Guertin v. State</u>, 912 F.3d 907, 918 (6th Cir. 2019) (quoting <u>Cnty. of Sacramento v.

Lewis</u>, 523 U.S. 833, 846–47 (1998))) (some internal quotation marks omitted).

The Sixth Circuit "has held that in some contexts 'government action may certainly shock

the conscience or violate substantive due process [even] without a liberty or property interest at

stake.'"  <u>Id.</u> (quoting <u>Range</u>, 763 F.3d at 589 (further internal citation omitted)).  In any case,

conduct that meets the "high bar" of the shocks-the-conscience standard "includes actions that are

'so brutal and offensive that [they do] not comport with traditional ideas of fair play and decency."

<u>Id.</u> (quoting <u>Range</u>, 763 F.3d at 589–90) (further internal citation omitted)) (alteration in original).

The Supreme Court has held that "liability for negligently inflicted harm is categorically beneath

the threshold of constitutional due process" and that "conduct intended to injure in some way

unjustifiable by any government interest is the sort of official action most likely to rise to the

conscience-shocking level."  <u>Lewis</u>, 523 U.S. at 849 (citing <u>Daniels v. Williams</u>, 474 U.S. 327,

331 (1986)).  Whether government conduct that is grossly negligent or reckless "shocks the

conscience" is a "matter for closer calls."  <u>Eldridge</u>, 2020 WL 1962988, at *6 (quoting <u>Range</u>, 763

F.3d R 590 (quoting <u>Lewis</u>, 523 U.S. at 849)).  Non-intentional violation of a plaintiff's

constitutional rights has been held to "shock[] the conscience" when the plaintiff was in

government custody and when there was no legitimate governmental purpose for the official's action, such as deliberate indifference to detainees' or prisoners' medical needs.  See Lewis, 523 U.S. at 849–50.  See also Eldridge, 2020 WL 1962988, at *6–7.

Once again, Plaintiff's assertion that "inquiry into motive is only relevant when the question is whether qualified immunity is sought to protect a defendant" and that "Pembaur removes qualified immunity from the equation" (ECF No. 25 at PageID 586) confuses the issues of municipal and individual liability; Hamric's motivation for his comments to Plaintiff is relevant to his individual liability under the case law discussed above.  There is no evidence that Hamric acted intentionally to deprive Plaintiff of his constitutional rights in warning Plaintiff that he would be arrested or in failing to report the alleged parks for inclusion on the TBI or TDOC maps. Plaintiff has admitted that there is no evidence to suggest that Hamric did not honestly believe the alleged parks were parks.  (Stewart Dep., ECF No. 24-1 at PageID 270–71.)  Hamric's comments to Plaintiff were made for the legitimate government purpose of assuring that Plaintiff, a registered sex offender, did not violate the law by residing within 1,000 feet of a public park.  Moreover, the record shows, without deciding the issue at this time, that the properties at issue were likely public parks; they were open to the public and maintained by the Town of Rossville (Def. SUMF, ECF No. 24-36 ¶¶ 21–29.)  There is also no evidence that Hamric's actions were reckless or grossly negligent, and Hamric's actions are readily distinguishable from conduct such as deliberate indifference to the medical needs of pretrial detainees.  See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983).  In sum, neither Hamric's threat to arrest Plaintiff nor his failure to report the parks for TBI or TDOC inclusion meets the "high bar" of "brutal and offensive" conduct that does "not comport with traditional ideas of fair play and decency."  Eldridge, 2020 WL 1962988, at *6 (quoting Range, 763 F.3d at 589–90) (further internal citation omitted)).

25

Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Count VII as against Defendant Hamric.  The Court discusses Plaintiff's substantive due process claim as against the Mayor and Aldermen and the Town of Rossville in separate sections below.

> iii.    Fourteenth Amendment Claims Against the Mayor and Aldermen (Counts IV, VI, & VII)

### a. Procedural Due Process Claims

Plaintiff also lodges a count for "lack of pre-deprivation hearing" against Defendants Watters, Moore, Williams, Kranz, Harris, Rinehart, and Swessel, but under the theory that these Defendants "knowingly delegated decision-making authority" to Hamric regarding sex-offender residency restrictions in Rossville, "ratified" his decisions in Plaintiff's case, and "delegated their own legislative function and [] judicial function" by allowing Hamric to "interpret[] the meaning of 'public park' as that term is used in T.C.A. § 40-39-211" (Count IV).  (ECF No. 20 at PageID 117–18.)  He also lodges a count against these Defendants for "unlawful burden shifting": he accuses Watters, Moore, Williams, Kranz, Harris, Rinehart, and Swessel of "presum[ing] any decision by Defendant-Hamric is right and correct unless and until proven otherwise by Stewart," thereby improperly "delegat[ing] their decision making policy to Defendant-Hamric" (Count VI). (Id. at PageID 119–20.)

Defendants assert:

> The conclusory allegations of improper delegation of legislative and judicial functions to Chief Hamric are not only without any factual basis in the record and contradicted by the declarations of the Mayor and Alderman filed in support of Defendants' Motion, they are also undermined by Plaintiff's concession that the determination whether the Rossville parks were, in fact, parks would have been made by the judge.

(ECF No. 24-35 at PageID 553–54.) (citing 24-1 at PageID 235, 269.)  Defendants contend that Plaintiff has failed to refute the presumption that these Defendants are entitled to their asserted

defense of qualified immunity.  (Id. at PageID 559–60) (internal citations omitted.)  (See also ECF No. 21 at PageID 151.)  They assert that "Plaintiff's conclusory allegations and his subsequent failure after discovery to unearth any fact to support his conclusory allegations against the Mayor and the Aldermen wholly fail to overcome qualified immunity."  (ECF No. 24-35 at PageID 560.) They assert that Plaintiff has not put forward specific facts showing that these Defendants, "through their individual actions, violated Plaintiff's constitutional rights," nor any conduct by them "that was clearly established prior to October 7, 2020 to be violative of the Constitution." (Id.)  Defendants additionally contend that "[a]s Plaintiff's claims against the Mayor and the Aldermen are premised on Chief Hamric having violated Plaintiff's constitutional rights, Plaintiff's claims against the Mayor and the Aldermen fail . . . [because] Chief Hamric did not violate Plaintiff's constitutional rights."  (Id. at PageID 562.) (citing Hussein, 617 F.3d at 833.)

Defendants assert that they have put forward "undisputed declaration testimony" that the individual Aldermen were unaware in 2020 that Plaintiff was interested in the 150 2nd Street property and that they and the Mayor were unaware that Hamric had spoken with Plaintiff; that Defendants Harris and Rinehart were not even on the Board at the time; that the Aldermen never delegated to Hamric "legislative authority to set aside parcels of land for use as public parks," "authority to enact legislation or make judicial decisions," or the authority to determine that the parcels at issue were parks, as the Board had already made that determination themselves; "that the Aldermen took no action to prevent Plaintiff from owning the house located at 150 2nd Street" or to condemn that property; and that the Aldermen "have not adopted any ordinance or resolution concerning Plaintiff's use" of that property."  (Id. at PageID 561.) (citing Watters Decl., ECF No. 24-3 ¶¶ 7–8, 60–63, 66; Moore Decl., ECF No. 24-23 ¶¶ 7-10; Williams Decl., ECF No. 24-24 ¶¶ 9–11; Kranz Decl., ECF No. 24-25 ¶¶ 7–10; Harris Decl., ECF No. 24-26 ¶¶ 7–10; Rinehart Decl.,

ECF No. 24-27 ¶¶ 7–10.)  Defendants also assert that Plaintiff "conceded during his deposition that he is not aware of any fact to suggest that any Alderman asked Chief Hamric to do anything that would violate the law."  (Id. at PageID 561–62.) (citing Stewart Dep., ECF No. 24-35 at PageID 264–65.)

Plaintiff contends that there is a jury question as to whether the Mayor and Board of Aldermen's, through the Municipal Planning Commission's "conscious decision to not list the three parks on the Town website [as neighboring municipalities had done] or to place signage in a prominent location on each property to identify them as parks" constituted a municipal policy or custom that caused a constitutional violation under Pembaur.  (ECF No. 25 at PageID 585–86) (internal citations omitted).  Plaintiff contends that the Aldermen's "mere[] . . . ignorance of the facts of the case" or the fact that some of them were not Board members when Hamric spoke with Stewart are "irrelevant as long as the town they oversee continues to foster an unconstitutional policy and they perpetuate it."  (Id. at PageID 587.)

Defendants reply that "Plaintiff's Response fails to address Defendants' arguments regarding Plaintiff's . . . individual capacity claims against the Mayor and Board Members."  (ECF No. 28 at PageID 1212.)  Although the Court agrees that Plaintiff does not explicitly address these claims in his Response and only discusses municipal liability for these Defendants (see generally ECF No. 25), the Court nevertheless proceeds to consider Defendants' argument regarding the individual capacity claims on the merits.

In order to meet his burden and defeat the presumption that the Mayor and Aldermen are entitled to their raised defense of qualified immunity (see ECF No. 21 at PageID 151), Plaintiff "must establish with particularity that a defendant *himself* has violated some clearly established statutory or constitutional right in order to strip that person of the protection of qualified

immunity."  Harris v. City of Cleveland, 7 F. App'x 452, 457 (6th Cir. 2001); see also Mays v. City of Dayton, 134 F.3d 809, 813 (6th Cir. 1998).  See also Moniz v. Cox, 512 F. App'x 495, 498 (6th Cir. 2013) (stating that a plaintiff making a § 1983 claim must plead that each government-official defendant, through the official's "own individual actions," violated the Constitution, meaning that a claim against a supervisory official must plead that that individual "was personally involved in the alleged unconstitutional conduct").  Under the qualified immunity analysis, if the plaintiff does not show a violation of the plaintiff's constitutional rights, qualified immunity is upheld, and the Court need not address whether the defendant's conduct violated clearly established law.  See Pearson v. Callahan, 555 U.S. 223, 242 (2009).

Plaintiff has failed to plead with particularity that the individual actions of the Mayor or Aldermen violated his constitutional rights.  As Defendants assert, Plaintiff's bare allegations that these Defendants delegated their legislative and judicial functions to Hamric and ratified his decisions in Plaintiff's case (see ECF No. 20 ¶¶ 74, 83–84) are not only not particularized but are refuted by the record; instead, the record shows that these Defendants were unaware of Plaintiff's intent to purchase the subject property and/or of Hamric's comments to him, and that they, rather than Hamric, designated the alleged parks as public parks.  (See Watters Decl., ECF No. 24-3 ¶¶ 7–8, 60–63, 66; Moore Decl., ECF No. 24-23 ¶¶ 7-10; Williams Decl., ECF No. 24-24 ¶¶ 9–11; Kranz Decl., ECF No. 24-25 ¶¶ 7–10; Harris Decl., ECF No. 24-26 ¶¶ 7–10; Rinehart Decl., ECF No. 24-27 ¶¶ 7–10.; Swessel Decl., ECF No. 24-28 ¶¶ 7–10.)  Additionally, as the Court has already determined that Hamric's failure to provide Plaintiff with a pre-deprivation hearing was not a constitutional violation, any part that the Mayor and Aldermen allegedly played in denying Plaintiff such a hearing also cannot have violated Plaintiff's constitutional rights.  (See ECF No. 20 ¶¶ 75–78.)  Finally, the Mayor and Aldermen's failure to identify the alleged parks on the Town

website or by erecting signs, which Plaintiff alleges in his response constitutes a municipal policy under <u>Monell</u> and <u>Pembaur</u> (<u>see</u> ECF No. 25 at PageID 583–85, 587–88), are not themselves constitutional violations and are additionally irrelevant to individual liability.  These allegations will be addressed below in the Court's discussion of Plaintiff's claims against the Town.

Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Counts IV and VI as against the Mayor and the Aldermen.

### b.  Substantive Due Process Claim

Plaintiff lodges his substantive due process claim against all Defendants, as he states that their "processes" and "policies" "allow[ed] Defendant-Hamric" to deny Stewart's fundamental constitutional liberty to the use and possession of . . . 150 2nd St."  (ECF No. 20 ¶ 86–87.)

The Court's foregoing discussion of Plaintiff's substantive due process claim against Hamric lays out the legal standards relevant to his parallel claim against the remaining defendants. With this claim, too, Plaintiff has failed to allege any conduct by Defendants that "shocks the conscience." <u>Eldridge</u>, 2020 WL 1962988, at *6 (quoting <u>Guertin v. State</u>, 912 F.3d 907, 918 (6th Cir. 2019) (quoting <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 846–47 (1998))).  The Mayor and Aldermen's failure to erect signs in the alleged parks or add these parcels to the Town website as parks does not meet the "high bar" of "brutal and offensive" conduct that does "not comport with traditional ideas of fair play and decency."  <u>Eldridge</u>, 2020 WL 1962988, at *6 (quoting <u>Range</u>, 763 F.3d at 589–90) (further internal citation omitted)).

Accordingly, Defendants' Motion to for Summary Judgment is **GRANTED** with respect to Count VII as against the Mayor and the Aldermen.

### iv.    Municipal Liability (Claims Against the Town)

As part of his procedural and substantive due process claims against both Hamric and the Mayor and Aldermen, Plaintiff seeks to impose municipal liability on the Town of Rossville under Pembaur and Monnell, as he argues that their actions as decisionmakers are sufficient to constitute municipal policy, custom, or practice. (Counts III–VII).  (See ECF No. 20 ¶¶ 71–72, 78, 81, 83–84, 89.)

Defendants assert that because Hamric (and, thus, the other individual Defendants) "did not violate Plaintiff's constitutional rights, Plaintiff can state no cause of action against the Town pursuant to 42 U.S.C. § 1983."  (ECF No. 24-35 at PageID 558.) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Scott v. Clay Cnty., Tenn., 205 F.3d 867, 879 (6th Cir. 2000); Hoard v. Sizemore, 198 F.3d 205, 221 (6th Cir. 1999); Monday v. Oullette, 118 F.3d 1099 (6th Cir. 1997).)  Defendants further contend that "[u]nless a deprivation of some federal constitutional or statutory right has occurred, there is no need to address the issue of governmental custom or policy, as § 1983 provides no redress, even if Plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate." (Id. at PageID 559.) (citing Martinez v. California, 444 U.S. 277, 284 (1980); Lewellen v. Metro. Gov't. of Nashville & Davidson Cnty., Tenn., 34 F.3d 345, 351 (6th Cir. 1994); Gazette v. City of Pontiac, 41 F.3d 1061, 1067 (6th Cir. 1987).)

Plaintiff responds by asserting that the Town is liable because the individual Defendants' actions as decisionmakers for the Town constituted Town policy or custom (see ECF No. 25 at PageID 579–86), but he implicitly acknowledges that a constitutional violation must have occurred in order for his claim against the Town to be actionable under § 1983.  (See, e.g., id. at PageID 579 ("[A]lleging that a municipal policy or ordinance is itself unconstitutional is always sufficient to establish the necessary causal connection between the municipality and the constitutional

deprivation.") (internal citations omitted) (emphasis added); id. at PageID 580 (asserting that when "plaintiffs allege that they were deprived of their rights . . . by the unconstitutional application of a valid policy, or by a city employee's single tortious decision or course of action[,] . . . . [s]uch an action [may] constitute[] the act of the municipality and therefore provide[] a basis for municipal liability") (internal citations omitted) (emphasis added).)

In reply, Defendants contend that "Plaintiff's focus on Chief Hamric and the Board members' status as policymakers is misplaced, as he ignores the threshold issue for imposing municipal liability. 'There can be no [Monell] liability under § 1983 unless there is an underlying unconstitutional act,' which is absent from the present case." (ECF No. 28 at PageID 1216.) (internal citations omitted.)   Defendants assert that Plaintiff's argument about the "two state databases containing searchable maps" and "that cities that are more than 40 times the size of Rossville have chosen to erect signs in some municipal parks and that Rossville could have done likewise, do nothing to save his claim." (Id. at PageID 1216–17.) They assert that it is undisputed that the TBI map contains a disclaimer regarding its accuracy, that Plaintiff did not visit the TDOC website before making the offer on 150 2nd Street, and that the CEZ map is not 100 percent accurate or inclusive, is not publicized, and that "if an offender contacts TDOC and identifies a residence where he/she wishes to move and the map does not indicate the presence of a prohibited site, a TDOC employee conducts a visual inspection of the neighborhood to ensure that a . . . park is not located within 1,000 feet." (Id. at PageID 1217–18 n.22.) (citing ECF No. 24-36 ¶ 43, Stewart Dep., ECF No. 24-1 at PageID 182–83, Winchester Dep., ECF No. 27-4 at PageID 1183, 1191–92, 1194–95, 1197–98, 1201–02.)   Defendants further contend that "Plaintiff has come forward with no authority to suggest that park signage is a constitutional requirement, and the

absence of signage, even if it was required by state law[,] . . . is not actionable under § 1983." (Id. at PageID 1217.) (citing Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir. 1995).)

Defendants are correct that Plaintiff must prove an underlying violation of his constitutional rights before he can attribute liability for that violation to the Town. See, e.g., Heller, 475 U.S. at 799 ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."); Scott, 205 F.3d at 879 ("[O]ur conclusion that no officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as well."); Hoard, 198 F.3d at 221 ("A city or county and its leaders may not be held liable when there has been no constitutional violation by one of the city or county's employees."); Monday, 118 F.3d at 1105 ("Because no constitutional violations occurred in this case, . . . the City of Monroe necessarily is not liable to plaintiff.").

As discussed in detail above, Plaintiff has not provided evidence of a constitutional violation by any of the individual Defendants.  Hamric's comments to Plaintiff, any alleged enablement of those comments by the Mayor and Aldermen, Hamric's failure to submit the alleged parks for inclusion on the TBI or CEZ maps, and the Mayor and Aldermen's failure to erect signage or include the parks on the Town's website do not constitute deprivations of Plaintiff's constitutional rights.

Additionally, even if Hamric's conduct toward Plaintiff was unconstitutional and the other actions above constituted Town policy or custom, Plaintiff has failed to demonstrate "a direct causal link between the [alleged municipal] custom and the constitutional deprivation," which he acknowledges is a requirement of a successful § 1983 claim against the Town.  (ECF No. 25 at PageID 586.) (citing Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1993), cert. denied,

510 U.S. 1177 (1994).)  Plaintiff contends that "[t]he causation here could not be simpler."  (Id.)
He contends that "[h]ad there been a sign unambiguously identifying the [] parks as parks operated
by the Town of Rossville, or if they had been listed on the maps maintained by the state of
Tennessee, Jerry Stewart would have known the nature of the properties well before purchasing
150 2nd Ave," and, he implies, therefore would not have attempted to purchase the property,
thereby incurring Hamric's threat of arrest.  (Id.)  The causal chain that Plaintiff suggests is not
"simple[]" but, rather, attenuated.    In contrast, in Pembaur, the prosecutor's decision to
"command[] the officers forcibly to enter petitioner's clinic . . . directly caused the violation of
petitioner's Fourth Amendment rights."  475 U.S. at 484.  That type of direct causation between
municipal policy and a constitutional deprivation is absent from this case.

Whether because Plaintiff has not shown that his constitutional rights were infringed or
because the required causation discussed above is absent here, Plaintiff's claims against the Town
must fail.  Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to Counts
III–VII as against the Town.

### v.    Punitive Damages

Defendants assert that "Plaintiff's punitive damages claim against the Town and the
Official Capacity Defendants should be dismissed," as "[i]t is well-established that a municipality
is immune from punitive damages under § 1983."  (ECF No. 24-35 at PageID 563.) (citing City of
Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).)  Plaintiff does not address this argument
in his Response.  (See generally ECF No. 25.)  Accordingly, Defendants' Motion is **GRANTED**
as to the issue of punitive damages.  See Swanigan, 938 F.3d at 786 (citing Am. Copper & Brass,
Inc., 757 F.3d at 545).

### C.  Tennessee State Constitution Claims (Counts VIII–XI)

Finally, Defendants contend that the four claims that Plaintiff brings pursuant to the Tennessee Constitution (see ECF No. 20 at PageID 121–27) "fail as a matter of law and should be dismissed" because "[i]t is well-established that Tennessee law does not recognize a private cause of action for violations of the Tennessee Constitution."  (ECF No. 24-35 at PageID 564.) (citing Cline v. Rogers, 87 F.3d 176 (6th Cir. 1996); Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n, 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999).)  Plaintiff does not respond to Defendants' argument and makes no mention of his Tennessee Constitution claims in his Response to Defendants' Motion.  Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's Tennessee Constitution claims (Counts VIII–XI).  See Swanigan, 938 F.3d at 786 (citing Am. Copper & Brass, Inc., 757 F.3d at 545).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED**, this 18th day of August, 2022.

      /s/ Jon P. McCalla
      JON P. McCALLA
      UNITED STATES DISTRICT JUDGE